IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 13, 2021

## STATE OF TENNESSEE v. JEFFREY ALLEN MCNEW

**Appeal from the Criminal Court for Davidson County**
**No. 2018-A-9     Cheryl A. Blackburn, Judge**

———————————————————

### No. M2020-01227-CCA-R3-CD

———————————————————

Jeffrey Allen McNew, Defendant, entered a negotiated guilty plea to one count of aggravated burglary, one count of being a felon in possession of a firearm, two counts of aggravated robbery, one count of aggravated kidnapping, one count of carjacking, and four counts of aggravated assault. Pursuant to the plea agreement, Defendant was sentenced as a Range III, Persistent Offender, and the trial court determined the length and alignment of the sentences. Following a sentencing hearing, the trial court imposed an effective sentence of 135 years. After a thorough review of the record and applicable law, we determine that the trial court did not abuse its discretion in sentencing Defendant and affirm the judgments of the trial court. However, we remand for entry of corrected judgments merging the aggravated assault conviction in Count 7 into the aggravated robbery conviction in Count 3 and merging the aggravated assault conviction in Count 8 into the aggravated robbery conviction in Count 4.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Martesha L. Johnson, District Public Defender, Jeffrey A. DeVasher, Assistant Public Defender (on appeal), Jonathan Wing, Assistant Public Defender (at hearings), for the appellant, Jeffrey Allen McNew.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jordan F. Hoffman, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

The prosecution summarized the facts of this case at the plea submission hearing as follows:

> [O]n September 17 of 2017 at approximately 7:30 in the morning, [Defendant] and Sadie Arnold [("Co-defendant")] entered [J.C. II and M.C.'s][1] residence [] through a kitchen window. The two suspects went into the bedroom of [J.C. II] and [M.C.], produced a handgun and a stun gun. [Defendant] was, at that point, in possession of the handgun, and [Co-defendant] was in possession of the stun gun, and [they] demanded money and valuables. When they realized there was a fourteen-year-old in the house, [J.C. III], and also his best friend was spending the night, [B.C.], age fourteen, they demanded . . . that the children join the adults in [J.C. II and M.C.'s] bedroom; and then all four of them were held at gunpoint by [Defendant] and [Co-defendant]. While [Defendant] stayed with the victims, [Co-defendant] ransacked the house, taking 13 [items of] jewelry, change and other valuables from the home. They looked for prescription medicine and demanded cash. When they became unsatisfied by the lack of cash in the home, [Defendant] and [Co-defendant] forced [J.C. II] to drive them in his car to a Bank of America ATM where he made two withdrawals at the max of $200 each before he was locked out of the system. [Defendant] and [Co-defendant] then forced him to drive back to the house. At that point, [Defendant] and [Co-defendant] chose one of [J.C. II and M.C.'s] cars to take. They then stole that car, all the other items that they stole from the [victims] and fled the scene.

## Sentencing Hearing

The prosecution announced that Defendant was on parole at the time he committed the offenses and that any sentence imposed by the trial court would be mandatorily consecutive to the sentence for which he was paroled. The prosecution then entered the presentence report as Exhibit 1 and the victim impact statement as Exhibit 2 and rested.

Defendant called Amanda Marie Ward, Defendant's half-sister who lived in Michigan. She said that their mother was an alcoholic and that her mother's boyfriends

---

[1] It is the policy of this court to protect the identity of minors. To do so, we will use initials of the adult and minor victims or "victims."

were abusive. She said that the minor children were removed from their mother's home. She and her brother Dale went to live with their older sister, and Defendant went to live with his father. She said that she and all of her siblings struggled with drugs. Dale died of a heroin overdose, and Defendant was addicted to heroin. She had been able to get Defendant sober six or seven times previously, but each time, he relapsed. She said that Defendant's substance abuse problem was a primary contributor to his legal problems.

Defendant's father, Jeffrey Ray McNew, testified that he lived in Michigan and was employed by General Motors. He said that he divorced Defendant's mother in 1993 due to her alcoholism. In 1999, Defendant came to live with him after a court took all of the children away from Defendant's mother. He said that Defendant was a drug addict and asked the court to send him to rehabilitation.

Defendant testified that he was thirty-two years of age. He admitted that he committed the offenses and knew that occupants could be home on Sunday morning when he broke into the house. He agreed that he could have left when he found the adults at home or when he learned that children were present. He claimed that he was high on Klonopin when he committed the offenses.

Defendant said that his mother was an alcoholic, that she had a "couple of boyfriends" that were abusive to her, and that he would sometimes step in and defend her. He dropped out of school after the ninth grade and later earned a GED. He began drinking alcohol and smoking marijuana around the age of nine and started taking cocaine at the age of fourteen or fifteen. He started using heroin in 2010. He admitted that he had twelve prior felony convictions. He said that during his prior incarceration, he was attacked, "stomped out," and stabbed.

The trial court questioned Defendant about the dangers associated with the offenses as follows:

> THE COURT: And the reason for that is people have guns in their house, people have dogs in their house. So why on earth would you go into a house at seven o'clock on a Sunday morning? Why would you do that?
>
> DEFENDANT: To be honest, I truly believed that all those pills I had taken throughout the night --
>
> THE COURT: So you're blaming it on the pills?

DEFENDANT:  I don't want to blame it on the pills because that's not an excuse but, at the same time, a Klonopin pill --

THE COURT:  You took a gun in there with you, did you not?

DEFENDANT:  Yes, I did carry a gun.

THE COURT:  So why did you take the gun in?

DEFENDANT:  I always carried a gun.

### *Findings of the Trial Court*

Following argument of counsel, the trial court pronounced sentence.  The court stated that it had considered the purposes of sentencing outlined at Tennessee Code Annotated section 40-35-102 and the sentencing factors found at section 40-35-210(b), including the evidence at the sentencing hearing, the presentence report, the principles of sentencing, the nature and characteristics of the criminal conduct, the statistical information provided by the Administrative Office of the Courts, Defendant's testimony at the hearing and his statement in the presentence report, the victim impact statements, and the needs assessment attached to his presentence report.

Concerning the needs assessment, the court stated:

I find it not valid, quite honestly, and I have a real hard time with some of the recommendations that they made, especially when they make something like this in terms of his assessment of aggression.  It says "there is no history of threatening, aggressive or violent behaviors in his lifetime, and there's no indication that the subject ever threatened or injured anyone with a weapon." To make that statement, given the facts of this case, I'm not going to rely on the needs assessment provided by the Department of Corrections.  I don't find it valid or in any way related to this case.

The trial court found that enhancement factors 1, 2, 8, and 13 applied.  The court found that Defendant had "a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range."  Tenn. Code Ann. § 40-35-114(1) (2020).  The court noted that Defendant had twelve prior aggravated burglary convictions,[2] that only "six of them are needed to get the persistent offender

---

[2] Based on the presentence report, Defendant had eleven prior aggravated burglary convictions and one attempted aggravated burglary conviction.

[classification,]" and that Defendant was actually a career offender. The court found that he also had nineteen prior misdemeanor convictions. The court found that Defendant "was a leader in the commission of an offense involving two (2) or more criminal actors," that "before trial or sentencing, [Defendant] failed to comply with the conditions of a sentence involving release into the community," and that Defendant was released on parole "[a]t the time the felony was committed." Tenn. Code Ann. §§ 40-35-114 (2), (8), and (13) (2020). The court stated that it was not giving much weight to factor (8).

The court found the fact that Defendant entered a plea of guilty and thereby avoided putting the victims through a trial to be a mitigating factor.

*Alignment of Sentences*

In considering consecutive sentencing, the trial court found that "[D]efendant is an offender whose record of criminal activity is extensive[.]" Tenn. Code Ann. § 40-35-115(b)(2) (2020). The court noted that Defendant had twelve prior aggravated burglary convictions and nineteen prior misdemeanors convictions.

The trial court found that "[D]efendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4) (2020). In support of this criterion, the court stated:

> I find that given the circumstances of this case and the description of going into someone's home while they're asleep, in broad daylight, where they pull the children out of bed, and I'm just reading from the victim impact [statement], and while they ransacked the home. According to this, he was condescending, explaining that he was berating us for not having enough cash or desirable weapons, and they had a gun and a taser. All that going into somebody in their house, and taking the father away to get money out of the ATM.
>
> So besides that, though, I need to go further and look at the *State v. Wilkerson* [905 S.W.2d 933 (Tenn. 1995)] factors, and that is I must find that [(1)] the aggregate term reasonably relates to the severity of the offenses, and (2) it is necessary in order to protect the public from further serious criminal conduct by [D]efendant. And I find, that based on the facts of this case and the fact that he has twelve prior convictions for aggravated burglary, which is a home invasion type of crime, is that he needs to be taken out of society to protect the public from further serious conduct. So[,] I do find that there is a necessity of some consecutive sentencing.

## *Sentences*

The chart below shows the length of the sentences, the release eligibility date ("RED"), and the alignment of the sentences imposed the trial court:

| Count | Offense of Conviction | Sentence | RED | Alignment |
|---|---|---|---|---|
| 1 | Aggravated Burglary | 15 years | 45% | Concurrent with Counts 2, 7, 8, 9, and 10. Consecutive 3, 4, 5, and 6. |
| 2 | Convicted Felon in Possession of a Weapon | 6 years | 45% | Concurrent with Counts 1, 7, 8, 9, and 10. Consecutive 3, 4, 5, and 6. |
| 3 | Aggravated Robbery | 30 years | 85% | Consecutive to all Counts. |
| 4 | Aggravated Robbery | 30 years | 85% | Consecutive to all Counts. |
| 5 | Aggravated Kidnapping | 30 years | 100% | Consecutive to all Counts. |
| 6 | Carjacking | 30 years | 75% | Consecutive to all Counts. |
| 7 | Aggravated Assault | 15 years | 45% | Concurrent with Counts 1, 2, 8, 9, and 10. Consecutive 3, 4, 5, and 6. |
| 8 | Aggravated Assault | 15 years | 45% | Concurrent with Counts 1, 2, 7, 9, and 10. Consecutive 3, 4, 5, and 6. |
| 9 | Aggravated Assault | 15 years | 45% | Concurrent with Counts 1, 2, 7, 8, and 10. Consecutive 3, 4, 5, and 6. |
| 10 | Aggravated Assault | 15 years | 45% | Concurrent with Counts 1, 2, 7, 8, and 9. Consecutive 3, 4, 5, and 6. |

The total effective sentence was 135 years with 30 years at 100%, 60 years at 85%, 30 years at 75%, and 15 years at 45%. As mandated by Tennessee Rule of Criminal Procedure 32(c)(3)(A), the court ordered the 135-year sentence to be served consecutively to the felony sentence for which Defendant was on parole at the time he committed the offenses in this case.[3]

Following sentencing, Defendant filed his notice of appeal.

---

[3] Defendant testified that, at the time of the sentencing hearing, he was serving the remainder of the twelve-year sentence for which he was on parole at the time he committed the offenses in this case. He stated that he had been in custody since September 2017 and that he expected to be released in February 2022.

**Analysis**

On appeal, Defendant claims that the trial court erred in imposing the maximum sentence for each conviction, erred in imposing partially consecutive sentences, erred in failing to impose the least severe measure necessary to achieve the purposes for which the sentences were imposed, and erred in failing to merge the aggravated assault conviction in Count 7 into his conviction for aggravated robbery in Count 3 and the aggravated assault conviction in Count 8 into his conviction for aggravated robbery in Count 4.

The State claims that the trial court did not abuse its discretion by sentencing Defendant within the applicable range after finding multiple enhancement factors or by imposing partially consecutive sentences after finding Defendant had an extensive criminal record and was a dangerous offender. The State claims that the record is inadequate to conclude merger is required and that Defendant abandoned this issue below.

***Standard of Review***

When a trial court provides on the record its reasons for imposing a within-range sentence and those reasons are in accordance with the purposes and principles of sentencing, the trial court sentencing decisions are reviewed under an abuse of discretion standard, accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). When the trial court provides reasons on the record establishing by a preponderance of the evidence that at least one of the seven criteria listed in Tennessee Code Annotated section 40-35-115(b), the trial court's consecutive alignment of sentences "will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013).

***Minimum and Maximum Sentences***

Defendant was convicted as a Range III, Persistent Offender of four Class B felonies, five Class C felonies, and one Class E felony. Tennessee Code Annotated section 40-35-112(c), which provides the minimum and maximum sentences for a Range III offender, provides in pertinent part:

> (2) For a Class B felony, not less than twenty (20) nor more than thirty (30) years;
>
> (3) For a Class C felony, not less than ten (10) nor more than fifteen (15) years;
>
> . . . .

(5) For a Class E felony, not less than four (4) nor more than six (6) years.

Tenn. Code Ann. §§ 40-35-112(c)(2), (3), and (5) (2020).

### *Length of Sentences*

The trial court stated that it considered the evidence at the sentencing hearing, the presentence report, the principles of sentencing, the nature and characteristics of the criminal conduct, the evidence on mitigating and enhancement factors, the statistical information provided by the Administrative Office of the Courts, Defendant's testimony at the hearing and his statement in the presentence report, and the victim impact statement and the needs assessment attached to his presentence report.

The court found four enhancement factors:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;

(13) At the time the felony was committed, one (1) of the following classifications was applicable to the defendant:

(B) Released on parole[.]

Tenn. Code Ann. §§ 40-35-114(b)(1), (2), (8), and (13) (2020).

Defendant's eleven prior Class C felony convictions for aggravated burglary and one prior conviction for Class D felony conviction for attempted aggravated burglary were well in excess of the convictions necessary to establish that Defendant was a Range III offender and clearly support the trial court's application of factor (1).

Defendant's admission that he was released on parole at the time the offenses in this case were committed support the trial court's application of factor (13).

- 8 -

The trial court found that Defendant "was a leader in the commission of an offense involving two (2) or more criminal actors." Although, we find no evidence in the record to show that Defendant was the sole leader in the offenses, enhancement factor (2) does not require a leader in the commission of an offense to "be *the* leader but only that he be *a* leader." *State v. James Teague*, No. 03CO1-9102-CR-00060, 1992 WL 28468 (Tenn. Crim. App. Feb. 19, 1992) (emphasis in original), *perm. app. denied* (Tenn. May 18, 1992); *see also State v. Hicks*, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993) (the defendant and co-defendant both found to be a leader). The trial court's finding that Defendant was a leader is supported by the evidence in this case.

Although the presentence report does not specifically show that Defendant, "before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community," the disposition dates and sentences of several convictions show that Defendant was arrested and convicted of subsequent offenses before the prior sentence could have expired. In any event, the trial court stated that it did not give much weight to factor (8), and even if the trial court misapplied factor (8), that "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. The trial court did not depart from the 1989 Act, as amended in 2005.

"A sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. The sentences imposed by the trial court were all within the appropriate range. The trial court articulated the reasons for the sentences in accordance with the purposes and principles of sentencing. We determine that the trial court did not abuse its discretion in sentencing Defendant to the maximum within-range sentence on each count.

### *Alignment of Sentences*

The Tennessee Supreme Court expanded its holding in *Bise* to a trial courts' decisions regarding consecutive sentencing. *Pollard*, 432 S.W.3d at 859. A trial court has discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b). *Id*. at 861.

The trial court found that Defendant's "record of criminal activity is extensive[.]" Tenn. Code Ann. § 40-35-115(b)(2) (2020). The court found that Defendant had twelve prior aggravated burglary convictions (actually eleven aggravated burglary and one attempted aggravated burglary) and nineteen prior misdemeanor convictions. Based on the presentence report, the misdemeanor convictions include one domestic assault with bodily

- 9 -

injury, two weapon offenses, and five drug offenses. Tennessee Code Annotated section 40-35-115(b)(2) has been interpreted "to apply to offenders who have an extensive history of criminal convictions and activities, not just to a consideration of the offenses before the sentencing court." *State v. Palmer*, 10 S.W.3d 638, 647-49 (Tenn. Crim. App. 1999). Additionally, "an extensive record of criminal activity may include criminal behavior which does not result in a conviction." *State v. Koffman*, 207 S.W.3d 309, 324 (Tenn. Crim. App. 2006). The presentence report shows that Defendant has a long history of illegal usage of marijuana, cocaine, heroin, Klonopin, Oxycontin, Xanax, and oxymorphone.

The trial court found that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4). The court stated that the *Wilkerson* factors applied to Defendant, finding "that the aggregate sentence reasonably relates to the severity of the offenses," and that an extended sentence "is necessary in order to protect the public from further serious criminal conduct by [D]efendant." *See Wilkerson*, 905 S.W.2d at 939. The court found "based on the facts of this case and the fact that [Defendant] has twelve prior convictions for aggravated burglary, which is a home invasion type of crime, [] that he needs to be taken out of society to protect the public from further serious conduct[.]" The proof established that Defendant and Co-defendant broke into the victims' home on a Sunday morning and that Defendant was armed with a gun.

"The power of a trial judge to impose consecutive sentences ensures that defendants committing separate and distinct violations of the law receive separate and distinct punishments. Otherwise[,] defendants would escape the full impact of punishment for one of their offenses." *State v. Robinson*, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995) *perm app. denied* (Tenn. June 3, 1996). We determine that the trial court did not err in finding that Defendant was a dangerous offender. The trial court did not abuse its discretion by imposing partial consecutive sentences.

### *Purpose and Principles of Sentencing*

The purposes of sentencing are codified at Tennessee Code Annotated section 40-35-102. The foremost purpose of sentencing is to promote justice. *Id*. To implement the purposes of sentencing, certain principles are listed in Tennessee Code Annotated section 40-35-103. Defendant argues that the 135-year aggregate sentence violates two of the principles of sentencing because the sentence is "greater than that deserved for the offenses committed" and is not "the least severe measure necessary to achieve the purposes for which the sentences were imposed." *See* Tenn. Code Ann. § 40-35-103(2), (4) (2020).

In *Pollard*, our supreme court stated: "The underlying principle, of course, is that the trial court must be afforded broad discretion in its sentencing decisions and the presumption of reasonableness will apply unless the trial court fails to address on the record the principles and purposes of our Sentencing Act." *Pollard*, 432 S.W.3d at 861. "So long as a trial court properly articulates reasons for [its sentencing decisions], thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862.

The trial court articulated its reasons for the sentences imposed, including the need to protect society from further dangerous conduct by Defendant, who had an extensive criminal record including eleven convictions for aggravated burglary and one conviction for attempted aggravated burglary; who, at the time he committed the offenses, was released on parole from a twelve-year sentence for prior aggravated burglaries; and who, armed with a handgun, broke into the victims' home on a Sunday morning, when he knew that the occupants might be home, and committed a number of dangerous felonies. "A trial court's sentencing determinations are fashioned to the individual offender." *State v. Jamie Paul Click*, E2015-01769-CCA-R3-CD, 2017 WL 1189750, at *22 (Tenn. Crim. App. March 30, 2017), *abrogated on other grounds by State v. Patterson*, 564 S.W.3d 423 (Tenn. 2018), *perm. app. denied* (Tenn. Aug. 16, 2017). The trial court fashioned the 135-year sentence based on the facts of the case and Defendant's criminal history. We previously determined that the trial court did not abuse its discretion by sentencing Defendant to the maximum within-range sentence on each count. Based on the reasons articulated by the trial court and the record, we determine the sentence imposed on each count was not greater than that deserved for the offense committed.

We also determine that the trial court did not abuse its discretion by imposing partially consecutive sentences. It was this partially consecutive alignment that resulted in the aggregate sentence being 135 years, and that is the basis for Defendant's argument that the sentence is not "the least severe measure necessary to achieve the purposes for which the sentences were imposed." The "least severe measure" argument made by Defendant is sometimes raised in cases in which a defendant is sentenced to life or life without parole and the trial court aligns the sentence for another offense committed by the defendant consecutive to the life or life without parole sentence. In one such case, this court stated:

> With regard to the [consecutive sentencing] factor of protecting society from further criminal acts by the offender, it has been posited that there can be no necessity to *further* protect society from an offender sentenced to life imprisonment without parole, and that consecutive sentencing would therefore never satisfy this criteria in such a case. While this argument certainly bears logic, we note that our supreme court has declined to give the claim merit, denying permission to appeal in several cases in which an

additional sentence has been ordered served consecutive to a sentence of life imprisonment without parole. *See, e.g., State v. Robinson*, 930 S.W.2d 78, 75 (Tenn. Crim. App. 1995), *perm.* [*app.*] *denied* (Tenn. 1996); *State v. Leon Barnett Collier*, No. 03C01-9602-CR-00072, 1997 WL 9722 (Tenn. Crim. App. [], Jan. 13, 1997), *perm.* [*app.*] *denied* (Tenn. [Nov. 3,] 1997); *State v. Sammie Lee Taylor*, No. 02C01-9501-CR-00029, 1996 WL 580997 (Tenn. Crim. App. []Oct. 10, 1996), *perm.* [*app.*] *denied* (Tenn. [Mar. 3,] 1997). Furthermore, the supreme court has upheld running a sentence consecutive to a sentence of death. *State v. Black*, 815 S.W.2d 166, 191 (Tenn. 1991).

*State v. Delivetrick D. Blocker*, No. 03C01-9803-CR-00120, 1999 WL 124223, at *10 (Tenn. Crim. App. Mar. 10, 1999) *perm. app. denied* (Tenn. Oct. 4, 1999).

Here, the trial court addressed on the record the principles and purposes of our Sentencing Act. The 135-year sentence is therefore presumed reasonable and, absent an abuse of discretion, will be upheld on appeal. We find that the trial court did not abuse the "broad discretion" afforded to a trial court's sentencing decisions. *Pollard*, 432 S.W.3d at 861.

### *Merger of Convictions*

Defendant claims that the trial court erred in failing to merge the conviction for aggravated assault in Count 7 with the conviction for aggravated robbery in Count 3 (victim for both was J.C. II) and the conviction for aggravated assault in Count 8 with the conviction for aggravated robbery in Count 4 (victim for both was M.C.).

The State argues that the record is not sufficient for this court to conclude that merger was required, that Defendant abandoned the issue, and that Defendant is not entitled to plain error relief.

#### *Waiver or Abandonment*

The State argues that Defendant waived and abandoned the double jeopardy claim. Entry of a guilty plea does not "automatically constitute a waiver" of a double jeopardy claim "when the claim was apparent from the face of the record." *State v. Rhodes*, 917 S.W.2d 709, 711 (Tenn. Crim. App. 1995). In the sentencing memorandum admitted as Exhibit 3 to the sentencing hearing, Defendant argued that the trial court should merge his conviction for aggravated assault in Count 7 into his conviction for aggravated robbery in Count 3 and his conviction for aggravated assault in Count 8 into his conviction for aggravated robbery in Count 4. Defense counsel also orally argued for merger of these offenses at the sentencing hearing. The double jeopardy claim is not waived or abandoned.

- 12 -

*Double Jeopardy*

Whether multiple convictions violate double jeopardy is a mixed question of law and fact, which we review de novo without any presumption of correctness. *State v. Watkins*, 362 S.W.3d 530, 539 (Tenn. 2012). The Fifth Amendment of the United States Constitution and Article I, section 10 of the Tennessee Constitution guarantee that no person shall "be twice put in jeopardy of life or limb" for the same offense and protect against: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Watkins*, 362 S.W.3d at 548. The claim in this appeal involves the third type of protection—multiple punishments for the same offense. Multiple punishment claims in a single prosecution, ordinarily fall into one of two categories: a "unit-of-prosecution" claim or a "multiple description" claim. *Watkins*, 362 S.W.3d. at 543. A unit of prosecution claim can arise when a defendant is convicted of multiple violations of the same statute. *Id.* A multiple description claim can arise when a defendant is convicted of multiple criminal offenses under different statutes that punish the same act or transaction. *Id.* at 544. This appeal involves a multiple description claim.

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).[4] The *Blockburger* test, also called the same elements test, "requires an examination of the statutory elements in the abstract, without regard to the proof offered at trial in support of the offenses." *Watkins*, 362 S.W.3d at 544. "The *Blockburger* test involves a two-step process." *Id* at 545. The first step is to determine "whether the alleged statutory violations arise from the same act or transaction." *Id*. (internal quotation marks omitted). If the alleged violations did not arise from the same act or transaction, then there is no double jeopardy violation. *Id*. If the convictions did arise from the same act or transaction, "the second step of the *Blockburger* test requires courts to examine the statutory elements of the offenses. If the elements of the offenses are the same, or one offense is a lesser included of the other, then [courts] will presume that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy." *Id.* at 557.

---

[4] The Tennessee Supreme Court in *Watkins* adopted the *Blockburger* same elements test. *Watkins*, 362 S.W.3d at 556.

- 13 -

*Same Act or Transaction*

Defendant is charged in Count 3 with aggravated robbery by intentionally or knowingly committing theft of money from the person of J.C. II accomplished by putting J.C. II in fear by displaying a deadly weapon. Defendant is charged in Count 7 with aggravated assault by intentionally or knowingly causing J.C. II to reasonably fear imminent bodily injury by displaying a deadly weapon. Defendant is charged in Count 4 with aggravated robbery by intentionally or knowingly committing theft of cell phones and jewelry from the person of M.C. accomplished by putting M.C. in fear by displaying a deadly weapon. Defendant is charged in Count 8 with aggravated assault by intentionally or knowingly causing M.C. to reasonably fear imminent bodily injury by displaying a deadly weapon.

We determine that the aggravated assault in Count 7 and the aggravated robbery in Count 3 arose from the same act committed against J.C. II. Likewise, we determine that the aggravated assault in Count 8 and the aggravated robbery in Count 4 arose from the same act committed against M.C.

*Lesser Included Offense*

As pertinent here, an offense is a lesser included offense if all of its statutory elements are included within the statutory elements of the offense charged. Tenn. Code Ann. § 40-18-110(f)(1) (2020). It is well settled in Tennessee that aggravated assault is a lesser included offense of aggravated robbery when the theft is accomplished by displaying a deadly weapon and by causing the victim to reasonably fear imminent bodily injury. *State v. Franklin*, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003); *see also State v. Swift*, 308 S.W.3d 827, 832 n.6 (Tenn. 2010) (aggravated assault is a lesser included offense of aggravated robbery when the use of violence and fear occurred prior to or contemporaneously with the taking). "[M]erger is required when a jury returns verdicts of guilt on two offenses and one of the guilty verdicts is a lesser included offense of the other offense." *State v. Berry*, 503 S.W.3d 360, 362 (Tenn. 2015). When a defendant pleads guilty to two offenses, one of which is a lesser included offense of the other, a double jeopardy claim is not waived as long as "it is apparent from the record that the claim was raised before the trial court." *State v. Rhodes*, 917 S.W.2d 708 (Tenn. Crim. App. 1995); *see also State v. Walter Jude Dec*, No. M2009-01141-CCA-R3-CD, 2010 WL 2977875, at *3 (Tenn. Crim. App. July 30, 2010) (double jeopardy issue not waived by guilty plea where the record was clear that the defendant raised his merger claim before the trial court), *perm. app. denied* (Tenn. Dec. 8, 2010).

We conclude that dual convictions for aggravated robbery and aggravated assault in this case violate double jeopardy. *See State v. Timothy Davale Martin*, No. M2013-00569-

CCA-R3-CD, 2014 WL 1102010, at *12 (Tenn. Crim. App. Mar. 20, 2014) (concluding that the defendant's "dual convictions for attempted aggravated robbery and aggravated assault violate double jeopardy protections" where the "essential elements of both offenses included the use of a deadly weapon and the victim's fear.") *perm. app. denied* (Tenn. Aug. 26, 2014).

## Conclusion

We affirm the sentences imposed by the trial court but remand for entry of corrected judgments merging the aggravated assault conviction in Count 7 into the aggravated robbery conviction in Count 3 and merging the aggravated assault conviction in Count 8 into the aggravated robbery conviction in Count 4.

_____
ROBERT L. HOLLOWAY, JR., JUDGE